UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PATRICIA ROLAND, et al.,

Plaintiffs,

v. Case No. 07-C-1103

UNITY LIMITED PARTNERSHIP,

Defendant.

---

**DECISION AND ORDER**

---

The parties in this Fair Labor Standards Act case have filed cross-motions for summary judgment. In response to the Defendant's motion, the Plaintiffs, who are nurses employed at various times for the Defendant ("Unity"), filed a motion to strike several of the affidavits supporting Unity's motion. Because the summary judgment motions rely, in part, on the outcome of the motion to strike, briefing has been suspended on those motions pending a decision on the motion to strike. For the reasons given below, the motion will be denied, but the Plaintiffs will be afforded the opportunity to take additional discovery.

The central issue in this action is whether the nurses' on-call time is really "their" time or whether instead they are under so many restrictions during that time that they should be paid for their time spent on-call. *Dinges v. Sacred Heart St. Mary's Hospitals, Inc.,* 164 F.3d 1056, 1058 (7th Cir. 1999) ("where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable"); 29 C.F.R. § 785.17. In support of its summary judgment motion, Unity filed

affidavits from nine employees, all of whom support Unity's claim that the restrictions placed on them during on-call time do not significantly impact their personal lives. Plaintiffs move to strike these affidavits on the grounds that they are "surprise" and "shock and awe" revelations that were not disclosed during discovery. They assert that despite their efforts to uncover the names of any potential witnesses, Defendants failed to disclose the identities of any employees who might be supporting their position. As such, Plaintiffs have not had the opportunity to depose the witnesses and are therefore unable to reasonably respond to the Defendant's summary judgment motion.

Plaintiffs also challenge the affidavits on the grounds that they contradict the statement of Defendant's HR manager, who conceded in her deposition that most employees do not enjoy being on call. In light of that concession, Plaintiffs opted not to conduct further discovery on that point (e.g., interviewing other nurses) but now are faced with nine affidavits of employees who appear generally not to mind being on call after all.

The Defendant's position is that the Plaintiffs never requested this information in discovery. The interrogatories Plaintiffs filed requested names, addresses, etc. of witnesses who had information particular to Plaintiff Patricia Roland's allegations about how the on-call program affected *her* life. For example, Plaintiffs cite Interrogatory No. 16, which requests Defendant to:

> Identify all (a) witnesses (including their names, job titles, addresses and phone numbers) . . . which may provide evidence disputing the following allegation in par. 24 of Plaintiffs' Amended Complaint:
>
> *While on call, Plaintiff (Roland) could not devote time to the following ordinary activities of private life*:
>
> a. She could not travel for personal activities;
> b. She could not effectively visit with family or friends (because any visit was nearly certain to be interrupted with a phone call and work);
> c. She could not effectively attend personal events, parties, weddings, family

> reunions, and other events (because any such event was nearly certain to be interrupted with a phone call and work);
> d. She could not effectively shop (because she was nearly certain to be interrupted with a phone call and work);
> e. She could not spent [sic] holidays away from home or visit relatives who were out of town;
> f. She could not effectively attend dinners out or social functions with friends (because any such event was nearly certain to be interrupted with a phone call and work);
> . . .

(Brown Decl., Ex. A at ¶ 16) (italics added.)

Defendant's affiants, of course, were not concerned with whether or not Patricia Rolland was able to "devote time" to "effectively shop" or visit with her family or friends, which is what the interrogatory inquires about. Instead, each affiant testifies about how his or her *own* personal life is affected by the on-call restrictions. Because the interrogatories seek identification only of those who could dispute how the restrictions affected Patricia Roland herself, the affiants' identities would not have been responsive to Plaintiffs' discovery request.

Unity insists that its literal and narrow reading of the interrogatories is not opportunistic gamesmanship. In fact, it is wholly warranted by the Plaintiffs' own conduct because the Plaintiffs have themselves couched the case in terms of their own personal experiences while on call. For instance, their own summary judgment brief argues that the Defendants' witnesses have no "first-hand" knowledge about the Plaintiffs' activities while on call. (And thus should be ignored.) If the Plaintiffs are basing their case on their own "first-hand" experiences, then how can they complain that Unity interpreted its interrogatory as only requiring it to identify witnesses who had first-hand knowledge about the Plaintiffs' lives?

In addition, Unity argues that these witnesses are not "surprise" witnesses at all. Instead, Unity marshaled the nine affiants in response to what it viewed as Plaintiffs' own surprising testimony. In particular, Plaintiffs had conceded that the relevant on-call requirements were these: nurses on call must remain within thirty-five miles of Marinette, have a cell phone, return calls within fifteen minutes, and not drink alcohol. Although Plaintiffs had agreed that these were the extent of the Defendant's on-call requirements, Plaintiff Roland testified (for example) that she was unable to take a shower while on call, and Plaintiff Breecher testified that he felt unable to leave his own yard. The Defendant's position is that these self-imposed restrictions are idiosyncratic to these Plaintiffs and unwarranted by the letter of the Unity on-call policy; as such, it sought to respond to Plaintiffs' assertions by providing evidence that other employees do not feel as restricted as the named Plaintiffs apparently do.

Surely, the Plaintiffs argue, there is some aspect of hair-splitting to the Defendant's position. It is somewhat superficial to claim that the affiants' identities were not responsive to the interrogatories because the on-call regulations affect nurses in nearly identical ways. Although Nurse Smith might not be testifying about how the regulations affect Nurse Jones *per se*, a reasonable person would infer that Nurse Smith's statement that she was able to devote time to personal activities is implicitly a refutation of Nurse Jones' statement that she was not.[1]

Rule 37 states that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted

[1]Plaintiff also asserts that if Unity were correct that its affiants were not testifying about the Plaintiff's own on-call experiences, then their testimony would be wholly irrelevant. I do not believe, however, that the testimony of similarly situated nurses would be irrelevant merely because they lack personal knowledge about the Plaintiffs' own life.

to use as evidence at a trial . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1); *David v. Caterpillar, Inc.,* 324 F. 3d 851, 856-57 (7th Cir. 2003). The first question is whether the identities of the affiants were withheld with "substantial justification," i.e., because their identities were not responsive to the interrogatories. In my view, it is truly debatable whether Unity was under an obligation to disclose the identities of the nine affiants in question. Perhaps Unity was being overly clever in its parsimonious reading of the interrogatories, and surely the liberal discovery rules are tilted towards openness rather than surprise. On the other hand, to what extent does a zealous advocate have an obligation to read opposing counsel's interrogatories generously? Because the question is so close, I conclude that granting the motion to strike would be too severe a penalty for behavior that is at least arguably supportable.

But by the same token, the rule requires *substantial* justification before one can withhold information – not just a plausible argument. Fed. R. Civ. P. 37(c)(1). Though I am not certain that there exists "substantial" justification for withholding the names of the affiants here, I am satisfied that the matter can be remedied without prejudice to the parties, thus rendering any failure to disclose "harmless." Fed. R. Civ. P. 37(c)(1). If Plaintiffs need to take additional discovery on the nine affiants, they may do so, and Unity is directed to make every effort to make the affiants available at the earliest opportunity.[2] Regardless, Plaintiffs will be afforded an additional two months in which they may conduct discovery or otherwise respond to the evidence. Both sides' responses to the opposing summary judgment briefs will be due September 18; replies may be filed by October 5.

[2]Although as Unity notes, there is not much that is debatable about the affidavits because they relate to the affiants' own personal lives.

For the reasons given above, the motion to strike is **DENIED**, but the briefing schedule will be modified as set forth in the previous paragraph.

**SO ORDERED** this __14th__ day of July, 2009.

s/ William C. Griesbach
William C. Griesbach
United States District Judge